UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANTONIO CABALLERO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action No. 1:21-cv-11393-IT |
| | * | |
| FUERZAS ARMADAS REVOLUCIONARIAS | * | |
| DE COLOMBIA and THE NOTRE DE VALLE | * | |
| CARTEL, | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM & ORDER

September 30, 2021

TALWANI, D.J.

Pending before the court is Plaintiff Anthony Caballero's <u>Motion for TRIA Turnover Judgment</u> [#11]. For the following reasons, the motion is GRANTED.

## I.    Background

On May 20, 2020, the United States District Court for the Southern District of Florida issued a <u>Final Judgment</u> [#1-1] in favor of Caballero against Fuerzas Armadas Revolucionarias de Colombia ("FARC") and Norte de Valle Cartel ("NDVC") based on the kidnapping, torture, and murder of Caballero's father.[1] Caballero registered the judgment in this District and then moved *ex parte* for issuance of a post-judgment summons directing trustee process on Fidelity Investments[2] ("Fidelity") to allow enforcement of his judgment. *Ex Parte* Mot. for Post-J.

---

[1] The <u>Final Judgment</u> [#1-1] does not identify each defendant, but the underlying order makes clear that the judgment is against FARC and NDVC only, and that Caballero voluntarily dismissed named defendant Ejercito de Liberacion Nacional from the action. Order on Motion for Default Final Judgment 1 n.1, 14 [#5-1].

[2] Caballero identifies "Fidelity Investments" as the trade name for the FMR LLC group of companies. <u>See</u> *Ex Parte* Mot. for Post-J. Summons 3 n.1 [#5].

Summons [#5]. Caballero sought to attach assets held by Fidelity in the name of, or for the benefit of, Rafael Marquez Alvarez, Leonardo Gonzalez Dellan, and MFAA Holdings Limited ("MFAA"). Id.

The court granted the motion on November 24, 2020, finding that Caballero was entitled to *ex parte* attachment pursuant to the Anti-Terrorism Act, 18 U.S.C. § 2333(e), and the Terrorism Risk Insurance Act of 2002 ("TRIA"), Pub. L. No. 107–297, § 201(a), 116 Stat. 2322, 2337. Order 2 [#7]. The court then issued summons as to Fidelity, Summons [#8], and Fidelity filed a response stating that it had "identified accounts belonging to the individuals/entity identified in the Order and Summons" and confirming that five accounts had been attached with an approximate total value of $200,000. Fidelity Resp. [#9]; Affidavit [#9-1].

On February 5, 2021, Caballero filed the pending Motion for TRIA Turnover Judgment [#11]. He certified that he had mailed a copy of the summons to trustee to FARC, NDVC, MFAA, and Marquez Alvarez on November 30, 2020, and that he had also mailed a copy of (1) the certification of the judgment in this District, (2) the court's November 24, 2020 order authorizing issuance of summons to trustee, and (3) the summons to trustee to Marquez Alvarez, Gonzalez Dellan, and MFAA on December 15, 2020, at a number of addresses provided to him by Fidelity. Id. at 5 & n.4-6, 11-13; Affidavit [#11-2]. None of the entities or individuals appeared or moved to dissolve or modify the summons to trustee, and Caballero now asks the court to issue final judgment in his favor and to order Fidelity to turn over the funds held in the five accounts. Id. at 1; Revised Proposed Judgment [#12-1].

On February 19, 2021, Fidelity filed a Response [#13], stating that the assets held for the benefit of Marquez Alvarez are in a 401(k) plan account that is subject to the Employee Retirement Income Security Act of 1974 ("ERISA"), for which Fidelity serves as trustee.

Fidelity Resp. [#13]. Fidelity stated that it remained neutral in this proceeding but sought the court's determination as to "whether these 401(k) assets are . . . subject to turnover pursuant to TRIA, thereby overriding ERISA's anti-alienation rule." Id. With the court's leave, Caballero filed a Reply [#16] addressing this ERISA issue.

On March 26, 2021, Major League Soccer, LLC ("MLS"), as sponsor of the Major League Soccer 401(k) Plan (the "Plan") filed a Response [#18] to Caballero's Motion for TRIA Turnover Judgment [#11]. MLS Resp. 1 [#18]. The Plan stated that, like Fidelity, it took no position with respect to Caballero's motion but requested that the court specifically consider the following concerns: (1) that the Supreme Court's holding in Guidry v. Sheet Metal Workers Nat'l Pension Fund, 493 U.S. 365, 376 (1990), directs that exceptions to ERISA's anti-alienation rule be created only by Congress, and (2) that any turnover order be consistent with the terms of the Plan and not require the Plan to breach any of its other obligations. Id. at 2-3. Caballero requested, and the court allowed, leave to file a further memorandum addressing these additional issues. See Reply [#21].

The court held a hearing on Caballero's Motion for TRIA Turnover Judgment [#11] on September 29, 2021.

## II.   Discussion

### A.   *Statutory Conflict*

This matter, which presents an issue of first impression, lies at the intersection of two statutory provisions. The first is ERISA's so-called "anti-alienation" provision, 29 U.S.C. § 1056(d)(1). Congress enacted ERISA in 1974 to "protect . . . the interests of participants in private pension plans and their beneficiaries." 29 U.S.C. § 1001(c). To that end, ERISA prohibits a creditor from reaching funds in an ERISA-covered plan as a means of collecting a judgment

against a beneficiary. <u>Guidry</u>, 493 U.S. at 372 (ERISA's anti-alienation provision prohibits garnishment of a qualified pension plan "unless some exception to the general statutory ban is applicable"). That prohibition extends to alienation pursuant to a court order. <u>Id.</u> at 371-72 ("ERISA erects a general bar to the garnishment of pension plan benefits"). Further, the Supreme Court has held that only Congress can craft exceptions to ERISA's anti-alienation provision beyond those contemplated in ERISA itself. <u>See</u> <u>id.</u> at 376 ("If exceptions to this policy are to be made, it is for Congress to undertake that task").

The second statutory provision is TRIA, which Congress passed in 2002 to ensure that victims of terrorist acts are fully compensated, even when the victims' insurance plans do not cover acts of terror. Pub. L. No. 107-297, 116 Stat. 2322 (2002), <u>reprinted in relevant part at</u> 28 U.S.C. § 1610 note. TRIA provides that

> Notwithstanding any other provision of law . . . , in every case in which a person has obtained a judgment against a terrorist party on a claim based upon an act of terrorism, or for which a terrorist party is not immune under [28 U.S.C. § 1605(a)(7) (2000)], the blocked assets of that terrorist party (including the blocked assets of any agency or instrumentality of that terrorist party) shall be subject to execution or attachment in aid of execution in order to satisfy such judgment to the extent of any compensatory damages for which such terrorist party has been adjudged liable.

<u>Id.</u>

Caballero argues that TRIA's opening clause supersedes ERISA's anti-alienation provision and that he is therefore entitled to execution of the blocked assets. Reply 2-3 [#21]. He analogizes TRIA to other statutes containing similar "notwithstanding" clauses, which courts have found to override ERISA's anti-alienation provision. <u>Id.</u> at 3-7. This court agrees.

As an initial matter, the use of a "notwithstanding" clause in a statute "unambiguous[ly]" signals the drafter's intention that the provisions of the "notwithstanding" section override any conflicting federal statute. <u>United States v. Hyde</u>, 497 F.3d 103, 108 (1st Cir. 2007) (quoting

Cisneros v. Alpine Ridge Grp., 508 U.S. 10, 18 (1993)); see also Field v. Napolitano, 663 F.3d 505 (1st Cir. 2011) (holding that "notwithstanding" clause in Aviation and Transportation Act precluded conflicting cause of action provided in Rehabilitation Act). Cf. N.L.R.B. v. SW Gen., Inc., 137 S. Ct. 929, 933 (2017) ("[a 'notwithstanding' clause] shows which of two or more provisions prevail in a conflict").

Turning to the specific statute referenced by Caballero, the Mandatory Victims Restitution Act of 1996 ("MVRA"), 18 U.S.C. § 3613(a), makes criminal restitution orders enforceable against "all property or rights to property" and "[n]otwithstanding any other Federal law." 18 U.S.C. § 3613(a). Courts have unanimously held that this language signals a Congressional override of ERISA's anti-alienation provision. See United States v. Frank, No. 117CR114LMBMSN, 2020 WL 2205066, at *2 (E.D. Va. May 6, 2020), vacated and remanded, 8 F.4th 320 (4th Cir. 2021) (collecting cases showing that every court of appeals and district court to consider the issue has permitted the garnishment of ERISA-protected funds to satisfy criminal restitution orders); see also Frank, 8 F.4th at 325-36; United States v. Lambert, 395 F. App'x 980, 981 (4th Cir. 2010); United States v. Novak, 476 F.3d 1041, 1057-60 (9th Cir. 2007) (en banc); United States v. Irving, 453 F.3d 110, 126 (2nd Cir. 2006). Two other courts of appeals have held that the MVRA permits the garnishment of retirement funds covered by anti-alienation provisions similar to ERISA's. See United States v. DeCay, 620 F.3d 534, 540–41 (5th Cir. 2010) (holding that the MVRA permits garnishment of qualified trusts, notwithstanding the Internal Revenue Code's anti-alienation clause covering such benefits); United States v. Hosking, 567 F.3d 329, 334–35 (7th Cir. 2009), abrogated on other grounds by Lagos v. United States, 138 S. Ct. 1684, 1687, 201 L.Ed.2d 1 (2018) (same).

The analysis is the same in resolving the conflict between ERISA and TRIA. The Plan points to the Supreme Court's decision in <u>Guidry</u>, which directs courts to refrain from crafting judicial exceptions to ERISA's anti-alienation provision, as a potential barrier to execution of the blocked assets where "TRIA makes no explicit reference to ERISA." MLS Resp. 2-3 [#18]. But the Court in "<u>Guidry</u> did *not* apply a special plain statement rule, requiring that Congress explicitly mention the ERISA anti-alienation provision in an ensuing statutory provision in order to negate the ERISA provision." <u>Novak</u>, 476 F.3d at 1054 (emphasis original). Rather, the Court held that only Congress, not the courts, can craft exceptions. <u>Guidry</u>, 493 U.S. at 377. Where Congress included a "notwithstanding" clause in TRIA, Congress *did* create such an exception, signaling its unambiguous intent to override prior conflicting laws.

That interpretation is consistent with this circuit's treatment of the Foreign Sovereign Immunity Act of 1976 ("FSIA"), 28 U.S.C. §§ 1602–1611. FSIA grants jurisdictional immunity to a sovereign state and its property, subject to limited exceptions contained in FSIA. <u>Id.</u> §§ 1604, 1609. In the absence of legislation to the contrary, a court must treat FSIA's exceptions as the sole basis for jurisdiction over a sovereign state or its property. <u>See</u> <u>Sullivan v. Republic of Cuba</u>, 891 F.3d 6, 9 (1st Cir. 2018) (citing to <u>Argentine Republic v. Amerada Hess</u>, 488 U.S. 428, 443 (1989)) ("FSIA provides the sole basis for obtaining jurisdiction over a foreign state in the courts of this country"). However, the First Circuit has held that TRIA's "notwithstanding" clause overrides FSIA's grant of immunity. <u>Rubin v. Islamic Republic of Iran</u>, 709 F.3d 49, 54 (1st Cir. 2013) ("TRIA permits the attachment of property that might otherwise be immune under FSIA"); <u>cf.</u> <u>Bank Markazi v. Peterson</u>, 136 S. Ct. 1310, 1318 n.2 (2016) ("Section 16010(g) does not take precedence over 'any other provision of law,' as the TRIA does

. . .  Hence, the FSIA's central-bank immunity provision . . . limits § 1610(g), but not the TRIA").

Where the clear and broad language of TRIA signals Congress's intent to override conflicting statutory provisions, the court concludes that ERISA's anti-alienation provision does not prevent Caballero from executing on the attached assets.

B.     *Remedy*

Having found that the funds in Marquez Alvarez's 401(k) plan are subject to execution to enforce Caballero's judgment, the court next turns to the question raised by the Plan as to the scope of Caballero's judgment. Specifically, the Plan suggests that Caballero's rights are the same as those of Marquez Alvarez himself. MLS Resp. 3-4 [#18]. In turn, Marquez Alvarez's right in the Plan is the amount to which he has a "present, unconditional right to access," United States v. Sayyed, 862 F.3d 615, 619 (7th Cir. 2017), or whatever he could "presently demand," Novak, 476 F.3d at 1062. The Plan therefore requests that the court "take care to fashion a remedy that is consistent with the terms of the Plan" and "not require the Plan to breach any other obligation." MLS Resp. 3-4 [#18].

Caballero counters that the Plan mistakenly analogizes him to a commercial creditor seeking to recover a debt and that, based on the same broad language discussed above, he is not bound by the terms of the Plan. Reply 7-8 [#21]. He argues that because "TRIA is explicit that no '***other provision of law***' can prevent a TRIA judgment collector from executing against the blocked assets of a terrorist party (including an agency or instrumentality of same) to satisfy the ***full extent*** of damages for which a terrorist party is liable" and because Marquez Alvarez's "account . . .  is a 'blocked asset,' Caballero is [entitled] to collect the full amount of such blocked assets necessary to satisfy its judgment." Id. (emphasis original).

7

Turning back to the previous MVRA analogy, the courts to have considered the scope of recovery under the MVRA have held that recovery is limited by the contractual terms of the ERISA-covered plan. See Frank, 8 F.4th at 332 (holding that "because [the defendant] is entitled to a lump-sum disbursement from his 401(k) account, so is the government"); Sayyed, 862 F.3d at 619 (explaining that the government's right to enforce its criminal restitution order against a 401(k) account is "subject to the tax penalties faced by [the defendant] for early distribution of his retirement funds"); Novak, 476 at 1063 ("we hold the government can immediately garnish the corpus of a retirement plan to satisfy a MVRA judgment—rather than merely obtain post-retirement payments that otherwise would have gone to the defendant—if, but only if, the terms of the plan allow the defendant to demand a lump sum payment at the present time"). Such a limitation makes sense where the MVRA permits the government to take "all property or rights to property" held by an individual in order to satisfy a criminal restitution order. 18 U.S.C. § 3613(a). That raises the question of what the individual's "property" interest in the ERISA-covered plan is, and the courts to have considered the issue have concluded that the government "steps into the taxpayer's shoes" and acquires only "whatever rights the taxpayer himself possesses." Frank, 8 F.4th at 327 (quoting United States v. Nat'l Bank of Com., 472 U.S. 713, 725 (1985)).

Similarly, pursuant to TRIA, holders of judgments under the Anti-Terrorism Act may attach certain "blocked assets" in satisfaction of those judgments. 18 U.S.C. § 2333(e). TRIA, in turn, defines "blocked assets" to mean any assets "seized or frozen" by the United Statues pursuant to several different economic sanctions statutes. Id.; 28 U.S.C. 1610 note. As under the MVRA, the government can block only those assets, property, and interests in assets and property to which the individual or entity in question has rights. See 21 U.S.C. § 1904(b)

(Foreign Narcotics Kingpin Designation Act); 50 U.S.C. § 1702 (International Emergency Economic Powers Act); 50 U.S.C. § 4305(b)(1)(B) (Trading with the Enemy Act). This comports with the Plan's request that the court limit Caballero's rights to Marquez Alvarez's 401(k) to those which Marquez Alvarez himself has in the account.

### III.   Conclusion

For the foregoing reasons, Caballero's <u>Motion for TRIA Turnover Judgment</u> [#11] is GRANTED but is, with regard to the Plan, limited to those assets which Marquez Alvarez has a right to receive under the terms of the Plan.[3]

IT IS SO ORDERED.

September 30, 2021                          /s/ Indira Talwani
                                           United States District Judge

---

[3] As discussed at the hearing, the court will stay entry of judgment as to Marquez Alvarez pending further briefing in light of Fidelity's *Ex Parte* Notice of Supplemental Authority [#25].